# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

TIMOTHY L. MARSEE,                              )
      Plaintiff,                          )
                                           )
      v.                                   )      CAUSE NO.: 2:13-CV-392-PRC
                                           )
CAROLYN W. COLVIN,                              )
Acting Commissioner of the                      )
Social Security Administration,                 )
      Defendant.                          )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Timothy L. Marsee[1]

on November 1, 2013, and a Brief in Support of Reversing the Decision of the Commissioner of

Social Security [DE 20], filed on September 22, 2014. Plaintiff requests that the August 1, 2012

decision of the Administrative Law Judge denying his claim for disability insurance benefits be

reversed and remanded for further proceedings. On December 28, 2014, the Commissioner filed a

response, and Plaintiff filed a reply on January 20, 2015. For the following reasons, the Court grants

Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on January 24, 2011, and his

alleged onset date is December 3, 2010. His claim was denied initially and upon reconsideration.

Plaintiff timely requested a hearing, which was held on July 5, 2012. In attendance were Plaintiff,

his attorney, Plaintiff's wife, and an impartial vocational expert. On August 1, 2012, Administrative

Law Judge (ALJ) Henry Kramzyk issued a written decision denying benefits, making the following

findings:

---

[1] Timothy Marsee worked at the U. S. Courthouse in Hammond, Indiana, (AR 34), but the undersigned
Magistrate Judge is unfamiliar with him.

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.    The claimant has not engaged in substantial gainful activity since December 3, 2010, the alleged onset date.

3.    The claimant has the following severe impairments: status post cerebrovascular accident and degenerative disc disease of the lumbar spine.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry and push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for a total of 6 hours in a workday; and stand and/or walk for a total of 6 hours in a workday. He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can occasionally balance, stoop, and crouch, but never kneel or crawl. He must also avoid concentrated exposure to hazards such as heights and machinery.

6.    The claimant is capable of performing past relevant work as an armed security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from December 3, 2010, through the date of this decision.

(AR 13-20).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, arguing that (1) the ALJ failed to properly evaluate Plaintiff's memory loss problems, (2) the ALJ did not account for Plaintiff's limited lumbar range of motion in the RFC, (3) the ALJ failed to properly analyze Plaintiff's credibility, (4) the ALJ failed to compare the physical and mental requirements of Plaintiff's past

relevant work to the RFC, and (5) the ALJ incorrectly found transferability of skills. The Court

considers each argument in turn.

## A. Memory Loss

Plaintiff's first argument regarding the ALJ's evaluation of his memory loss is that the ALJ

improperly gave weight to an unsigned consultative psychological evaluation. At the administrative

hearing, Plaintiff objected to Exhibit 4F, a consultative psychological evaluation on the letterhead

of David R. Bucur, Ph.D., H.S.P.P. Plaintiff's objection was that Plaintiff had not been examined

by Dr. Bucur, and Plaintiff noted that the report was not hand-signed. The ALJ found Plaintiff's

"allegation that he did not see Dr. Bucur peculiar in light of personal information provided by the

claimant to Dr. Bucur . . . that is consistent with the record as a whole," (AR 16), but decided to give

the report little weight in light of the objections.

Plaintiff argues that it was reversible error for the ALJ to give the report any weight at all.

The Court rejects Plaintiff's contention that the report is unsigned. Dr. Bucur's electronic signature

is on the document, (AR 309), which is a form of signature permitted by the Social Security

Administration. *See* Social Security Administration, Program Operations Manual System, DI

24510.015 C.1 ("Acceptable CE report signatures are . . . electronic signature attestations submitted

through the Electronic Records Express (ERE) attestation process."). Additionally, Dr. Bucur's ERE

Attestation signature page includes an affirmation under penalty of perjury that he "personally

conducted, or personally participated in conducting, the consultative examination." (AR 309).

Plaintiff argues that *Terry v. Astrue*, 580 F.3d 471, 475-76 (7th Cir. 2009), supports his argument,

but the report in *Terry* was truly unsigned, not signed electronically, which is the case here, and Dr.

Bucur attests that he participated in Plaintiff's examination. Dr. Bucur's report is signed and

participation in Plaintiff's examination is attested to, so it was not in error for the ALJ to give the report some weight.

Plaintiff also contends that the ALJ made two additional errors that derive from Plaintiff's failed argument that Dr. Bucur's report is unsigned: (1) the ALJ's reliance on the reports of consulting psychiatrist Dr. J. Gange and consulting physician Dr. F. Kladder, both of whom had access to Dr. Bucur's report in creating their own reports, and (2) the ALJ's failure to order new memory testing in light of the evidence on the record being tainted by the "unsigned" report. Plaintiff's arguments in favor of finding error depend on Dr. Bucur's report being unsigned. Because the report is signed, these arguments fail.

Plaintiff next argues that the ALJ's descriptions of Plaintiff's diagnostic imaging as "normal" and, for studies occurring after March 2011, as "negative" are inaccurate. (AR 14, 16, 17). A December 2010 head CT had a finding of "minimal cortical atrophy." (AR 301). A neck CT, also taken in December 2010, revealed "mild atherosclerotic calcification at the origin of left subclavian artery." (AR 258). A February 2012 cerebral angiogram found "mild atherosclerotic changes" and "tortuosity . . . in the major intracranial arteries." (AR 373). Finally, a February 2012 brain MRI showed "minimum periventricular white matter hyperintensity," which was noted to be "a nonspecific finding but commonly represents sequela of chronic small vessel ischemic disease." (AR 373-74).

In *Roddy v. Astrue*, the ALJ's denial of benefits was reversed and remanded where MRI results, which indicated mild to moderate spinal disc degeneration and a tear in the surrounding cartilage, were mischaracterized as "essentially unremarkable." 705 F.3d 631, 637 (7th Cir. 2013). Similarly, in *Golombiewski v. Barnhart*, the ALJ remarked that the claimant's MRIs showed no herniations but provided no medical evidence for that statement and ignored one doctor's diagnosis

7

of a probable herniation in one of the MRIs. 322 F.3d 912, 917 (7th Cir. 2003). Without explanation

of how the ALJ reconciled his determination with the doctor's diagnosis, the *Golombiewski* court

rejected the ALJ's assessment of the MRIs. *Id.*

This Court is in much the same position as the courts in *Roddy* and *Golombiewski*. The ALJ

dismissed findings in test results without explanation and deemed the results "normal" and

"negative." The ALJ failed to articulate his analysis of the evidence, including the medical findings

Plaintiff identified, in finding the results "normal" and "negative." As a result, the Court is unable

to trace the path of the ALJ's reasoning and to be assured that he considered the important evidence.

*See Scott*, 297 F.3d at 595; *Diaz*, 55 F.3d at 307; *Green*, 51 F.3d at 101. Without an explanation of

why the results in the diagnostic imaging can be considered "normal" or "negative," the Court has

no basis to sustain the ALJ's assessment. Accordingly, the Court remands the matter for a proper

assessment of Plaintiff's diagnostic imaging studies.

### B. Lumbar Range of Motion

Plaintiff asserts it was error for the ALJ not to note that the consultative examiner, Dr.

Bautista, found zero degrees of extension in Plaintiff's lumbar spine, limited bilateral flexion, and

limited forward flexion. Plaintiff argues that these findings needed to be included in the ALJ's

determination that Plaintiff could occasionally balance, stoop, and crouch.

The ALJ found Plaintiff's degenerative disc disease to be a severe impairment and limited

Plaintiff's RFC in light of this impairment. No treating or examining doctor expressed an opinion

of Plaintiff being more restricted in ability than the ALJ's RFC finding, (AR 18), and Plaintiff

testified that he could bend or squat if he had something to hold on to, (AR 15). However, the ALJ

erred in failing to address Dr. Bautista's findings in determining Plaintiff's ability to stoop and

crouch. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (directing ALJ on remand to

fix error of failing to address medical findings of limited lower back flexion and inability to squat

in finding claimant could occasionally stoop, kneel, crouch, and crawl); *Golembiewski,* 322 F.3d at

917 (holding that ALJ's failure to address a medical report that claimant had limited flexion in lower

back was reversible error in finding that claimant could occasionally stoop); *Brown v. Colvin*, No.

2:14-cv-23, 2015 WL 438723, at *4 (N.D. Ind. Feb. 3, 2015) (reversing and remanding where ALJ's

finding of ability to stoop occasionally not supported by the record, which included evidence of

limited flexion and a medical finding that claimant was unable to stoop); *see also Godbey v. Apfel*,

238 F.3d 803, 808 (7th Cir. 2000) ("[The ALJ] must at least minimally discuss a claimant's evidence

that contradicts the Commissioner's position."). The ALJ erred by failing to address Dr. Bautista's

medical findings of limited flexion and extension in Plaintiff's spine in determining that Plaintiff

could occasionally balance, stoop, and crouch. Remand is proper on this ground, and the ALJ is

directed to consider Dr. Bautista's findings in determining Plaintiff's RFC.

## C. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about

his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20

C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding

of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective

medical evidence, and any other evidence of the following factors:

> (1) The individual's daily activities;
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) Type, dosage, effectiveness, and side effects of any medication;
> (5) Treatment, other than medication, for relief of pain or other symptoms;
> (6) Other measures taken to relieve pain or other symptoms;
> (7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff first finds fault with the ALJ's failure to discuss and weigh consultative reviewer Dr. Montoya's opinion that Plaintiff is credible. Plaintiff offers no specific details about Dr. Montoya's opinion or how its consideration by the ALJ would have changed the overall credibility determination. In fact, Dr. Montoya's entire opinion on Plaintiff's credibility is "Clmnt's allegations are credible," which is typed on the RFC assessment form Dr. Montoya completed. (AR 368). Dr. Montoya gives no explanation or analysis of his determination. Plaintiff fails to acknowledge that this comment was made in the context of finding that Plaintiff could perform light exertional work, the specifics of which the ALJ either agreed with or made more restrictive in his decision. However, because the Court is remanding for a proper assessment of the diagnostic imaging studies, the ALJ will have the opportunity to incorporate Dr. Montoya's credibility finding in the ALJ's credibility determination, and the Court directs him to do so. *See Lowe v. Colvin*, 2:12-cv-524, 2014 WL 4373637, at *9 (N.D. Ind. Sept. 3, 2014) (directing the ALJ to address the doctor's credibility opinion after ordering remand on other grounds).

Plaintiff next takes issue with the ALJ's statement that "[t]he totality of the evidence of record simply does not fully support the severity of the claimant's allegations." (AR 15). Plaintiff argues that this statement indicates the ALJ used an improper standard, namely a totality of the evidence standard, in his credibility finding. However, this statement by the ALJ is not a declaration of the standard he is applying to the case. The ALJ did not state that the claim must be denied because the totality of the evidence of record does not fully support the severity of Plaintiff's allegations. The lack of full support from the evidence of record is probative of credibility, and it was therefore proper for the ALJ to make this statement. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Marshall v. Colvin*, No. 4:12-cv-75, 2014 WL 1230219, at *17 (N.D. Ind. Mar. 25, 2014); *see also Bogenrief v. Astrue*, No. 11 cv 02790, 2012 WL 1032788, at *6 (N.D. Ill. Mar. 27, 2012) ("Subjective complaints need not be fully supported by the evidence, but the lack of support may be probative of the claimant's credibility.").

Next, Plaintiff argues that the ALJ, in finding Plaintiff's allegations of dizziness not credible, failed to address favorable evidence regarding Plaintiff's alleged dizziness. Plaintiff argues that the ALJ incorrectly failed to address treating physician Dr. Sanjeev Maniar's statement that Plaintiff's "tandem gait was more abnormal," (AR 265, 470), and consulting examiner Dr. Teofilo Bautista's statement that Plaintiff could "do tandem gait slowly," (AR 327). However, Plaintiff has not pointed to any evidence in the record relating these statements to dizziness.[2] Dr. Maniar's impression as recorded in his report notes that Plaintiff has a brain lesion and could have had a stroke, (AR 264-65), but contrary to Plaintiff's argument, this does not link his gait to dizziness. "The ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was

---

[2] Plaintiff cites a website in support of his argument, but the URL is broken and returns a 404 error message.

rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470,474 (7th Cir. 2004)). However, Plaintiff has not shown that these physician statements are favorable evidence of Plaintiff's complaint of dizziness, and, consequently, the ALJ had no obligation to address these statements in finding Plaintiff not credible as to dizziness.

Plaintiff also takes issue with the ALJ calling Dr. Bautista's report "generally unremarkable," (AR 17), because this report contains evidence of Plaintiff's limited range of motion in his lumbar spine. Plaintiff has taken the ALJ's statement out of context, which in full reads: "These generally unremarkable findings simply do not support the claimant's allegations regarding dizziness, headaches, and memory loss." (AR 17). The ALJ's statement does not refer to Plaintiff's lumbar spine range of motion. Furthermore, the ALJ recognized Plaintiff's impairment due to degenerative disc disease, even to the point of placing more restrictions in Plaintiff's RFC than were included in any doctor's assessment in the record. (AR 17-18). The ALJ did not err in calling the report "generally unremarkable" in regard to dizziness, headaches, and memory loss.

In his credibility determination, the ALJ noted that he would have expected more aggressive treatment if Plaintiff's symptoms were as severe as Plaintiff alleges. (AR 17). Plaintiff argues that the ALJ has made an improper independent medical determination because no doctor in the record indicated more aggressive treatment would be necessary if Plaintiff's symptoms were as severe as alleged. While the ALJ "may consider conservative treatment in assessing the severity of a condition," he should cite medical evidence about what kind of treatment would be appropriate. *Brown v. Barnhart*, 298 F. Supp. 2d 773, 797 (E.D. Wis. 2004) (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001)). Instead of citing evidence, the ALJ impermissibly relied on his own lay opinion that physical therapy, injections, or a surgical consultation would have been pursued if Plaintiff's symptoms were as severe as alleged. On remand, the ALJ should ask why

12

Plaintiff's treatment was not more aggressive, and, if the ALJ determines that the treatment was conservative, he shall discuss why more aggressive treatment would have been appropriate. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

Plaintiff next argues that the ALJ inaccurately paraphrased the evidence in the record regarding Plaintiff's lumbar disc degeneration. Plaintiff specifically alleges that "the ALJ noted that Mr. Marsee's lumbar degeneration was moderate and mild" but Plaintiff's lumbar degeneration is actually marked to mild. (Pl.'s Br. 14). However, the ALJ correctly noted that an April 2011 MRI showed marked, moderate, and mild degenerative disc disease at various places on Plaintiff's lumbar spine, and the ALJ cited the "x-rays that show mild to marked degenerative disc disease" as his reason for placing more restrictions on Plaintiff's RFC than Dr. Montoya's assessment. (AR 17-18). Plaintiff's argument is without merit.

Plaintiff's final argument regarding the ALJ's credibility determination is that SSR 96-7p requires the ALJ to consider Plaintiff's work history and the ALJ failed to do so. 1996 WL 374186 (Jul. 2, 1996). Although SSR 96-7p provides that an ALJ's credibility assessment must be based on consideration of all of the evidence, including work record, the ruling falls short of requiring a specific articulation of work record in every written decision. *Id.* at *5. Plaintiff cites *Alesia v. Astrue*, 789 F. Supp. 2d 921, 934-35 (N.D. Ill. 2011), to support his assertion that remand is required where the ALJ did not explain why a claimant with a strong work history would leave such work if he or she were capable of sustaining employment. Before the *Alesia* court addressed the ALJ's lack of work history discussion, however, the court had already determined that remand was necessary. *Id.* at 934. The court did not make a finding regarding whether the lack of discussion of work history in the opinion was "patently wrong" and necessitated remand. *Id.* at 934-35.

While no discussion of Plaintiff's work history made it into the ALJ's written decision, that

13

does not conclusively establish that the ALJ did not consider it. In fact, the ALJ noted that he "considered all of the factors set forth in SSR 96-7p in assessing the credibility of the claimant's statements." (AR 15). In his decision, the ALJ carefully set forth reasons for finding some of Plaintiff's statements not credible. The ALJ specifically mentions using statements by Plaintiff and his wife, objective medical evidence, and physicians' reports in making his credibility determination. The lack of explicit discussion of Plaintiff's work history does not render the credibility determination "patently wrong."

### D. Past Relevant Work

Plaintiff contends that the ALJ's step four decision is erroneous because he did not thoroughly analyze whether someone with Plaintiff's RFC could perform Plaintiff's past relevant work as actually or generally performed. While the ALJ's RFC determination may change on remand, the Court will address the error Plaintiff alleges in order to guide the ALJ's analysis on remand. In determining whether the claimant can return to his past relevant work, the ALJ "must ascertain the demands of that work in relation to the claimant's present physical capacities." *Nolen v. Sullivan,* 939 F.2d 516, 519 (7th Cir. 1991) (citing *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984)).

Pursuant to Social Security Ruling 82-62, the determination of whether an individual can perform past relevant work requires an examination of:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62, 1982 WL 31386, at *3 (Jan. 1 1982). The Ruling also requires the ALJ to set forth the

following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his past job or occupation.

*Id*. at *4. For findings two and three, "the ALJ must specify the duties involved in a prior job and

assess the claimant's ability to perform the specific tasks." *Nolen*, 939 F.2d at 519.

> Here, the ALJ wrote:
>
> The claimant has past relevant work as an armed security guard (DOT# 372.667-034), which is a semiskilled (SVP of 3), light physical demand job both as actually and generally performed.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The undersigned relies on the vocational expert's testimony in reaching this conclusion, as the testimony is consistent with the Dictionary of Occupational Titles (SSR 00-4p).

(AR 19). However, the ALJ failed to specify the particular duties of Plaintiff's past relevant work

and assess Plaintiff's ability to perform them as required by SSR 82-62. On remand, the ALJ shall

identify the specific physical and mental requirements of Plaintiff's past relevant work and assess

whether Plaintiff's RFC allows him to perform that work.

### E. Transferable Skills

At step five, the ALJ must determine whether the claimant can perform other work given his

age, education, RFC, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). Social Security

Administration regulations dictate:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled

or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s).

20 C.F.R. § 404.1568(d)(4). The regulation goes on to clarify the specific standards for finding transferable skills in a claimant at least 55 years old but not yet 60 years old, depending on whether the claimant's RFC limits him to light work or to sedentary work. A skill is "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level" and is "practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982).

Plaintiff argues that it was error for the ALJ to find that Plaintiff has the following transferable skills: (1) social perception, (2) relating to people, (3) anticipating them, (4) specific security guard skills, and (5) training of the law. Plaintiff likens these skills to the purported skill of "judgment" found by the ALJ in *Villano v. Astrue*, 556 F.3d 558, 563-64 (7th Cir. 2009), which the court rejected as too vague. The Government counters with "social perceptiveness," "information gathering," "problem identification," and "information organization," all of which were accepted as skills against a vagueness challenge in *Veasey v. Astrue*, No. 3:11-cv-467, 2012 WL 5866308, at *11 (N.D. Ind. Nov. 19, 2012). The Court is already remanding the present case for a proper assessment of impairments, which may in turn affect the ALJ's analysis at subsequent steps. On remand, the ALJ is directed to identify Plaintiff's skills, if any, in compliance with the definition of skill in SSR 82-41.

Finally, Plaintiff argues that the ALJ erred in failing to discuss or find minimal vocational adjustment between Plaintiff's past relevant work and the other jobs the vocational expert identified.

16

The ALJ did not cite the relevant portion of the vocational expert's testimony or discuss whether minimal vocational adjustment existed between Plaintiff's relevant work and the other jobs the vocational expert identified. For individuals age 55 or older and limited to sedentary work exertion or individuals age 60 or older and limited to light work exertion, SSR 82-41 requires the ALJ to articulate whether the skills found could be transferred with minimal vocational adjustment. If, on remand, the ALJ determines that Plaintiff is limited to work at the sedentary or light level and the ALJ reaches step five of the analysis, the ALJ is directed to make the requisite specific findings regarding transferability of skills pursuant to 20 C.F.R. § 404.1568(d).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20] and **REMANDS** the Commissioner of Social Security's final decision for further proceedings consistent with this Opinion and Order.

So ORDERED this 16th day of September, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT